The next case today is Jose Nalberto-Tacuri-Tacuri v. William P. Barr, Appeal Number 191687, Attorney Riley. Good morning, Your Honors, and may it please the Court. Casey Riley for Petitioner Jose-Tacuri. The legal error is clear. The Board of Immigration Appeals applied a heightened legal standard when reviewing the immigration judge's decision. The Attorney General is disguising a legitimate claim of legal error as an issue of fact. There is no dispute as to the facts which are found by the immigration judge. The Board of Immigration Appeals did not disturb or find any of the immigration judge's factual findings to be clearly erroneous. Thus, the Board applied a heightened legal standard to those facts in order to end up with their different conclusion. The immigration judge is the sole fact finder. By regulation, the Board is bound by those facts unless they determine those to be clearly erroneous. At no point did the Board hold that the immigration judge clearly erred in his findings of fact. Therefore, the facts as found by the immigration judge are those that are before Your Honors. The legal standard to be applied to those facts is exceptional and extremely unusual hardship with the factors laid out in cases such as Montreal and its progeny from the Board of Immigration Appeals. The immigration judge applied those facts to the legal standard and held that the petitioner met his burden. The Board, without assigning error to the legal analysis conducted by the immigration judge, reached a contrary conclusion because they heightened the legal standard at play. Could you, Ms. Riley, could you break this down for us? Is it, am I correct that the Board cited expressly the correct legal standard? You have no bone to pick with what it claimed to be applied. Yes, Your Honor, the Board expressly cited matter of Montreal as well as matter of Andazola. However, we would suggest that the Board applied a heightened legal standard despite their citation to those cases. Well, secondly, did the Board refute or contradict any underlying fact as found by the IJ? The Board did not refute or contradict any of the factual findings because they did not find any of those factual findings to be clearly erroneous. The Board, however, cherry-picked the record before it in order to support their legal conclusion that the hardship requirement was not met. Do you agree that on the issue of applying the legal standard to the undisputed facts, the Board was entitled to a de novo determination? With respect to legal analysis, yes. Per regulation, the Board is entitled to de novo review of the legal standard, yes. So, if we have certain facts and we know the Board is articulating the right standard, and then we have a conclusion through the application of that claimed standard, how is it that we infer that the Board, in fact, was applying a different standard? Is it because we find the result just impossible or irrational? Well, Your Honor, the Board does not suggest that the immigration judge erred in his legal analysis. The Board does not suggest that the immigration judge misweighed any of the evidence before it. Don't we necessarily have to view what the Board did as a determination that the IJ applied or misapplied the legal standard? Because it took the same facts that the IJ found, but said that it didn't meet the legal standard. Yes, Your Honor, you do have to look through what the facts of the Board used in order to reach the legal conclusion. However, we would suggest that the Board applied a heightened legal standard because there was no finding that the immigration judge clearly erred in the factual findings, nor was there an express concern by the Board that the immigration judge applied the wrong legal standard to those facts. In order to account for this difference between the legal conclusion by the Board and the legal conclusion made by the immigration judge, there must be some difference in the standard that's applied. We would suggest the Board applied a heightened legal standard in order to account for the difference. But isn't the Board just saying that based upon these facts, these facts don't constitute exceptional and extremely unusual hardship? The Board cherry-picks portions of the record without addressing a number of the factors that the immigration judge considered in making that same legal conclusion, without stating that the immigration judge had erred in considering those factors as well. The Board applied a heightened standard with the cherry-picking of the record to reach that different legal conclusion. As an example of this, the facts found by the immigration judge on pages 10 and 11 of the addendum were that petitioner's son suffers from asthma, which is a condition that has worsened since the time of petitioner's initial detention by Immigration and Customs Enforcement. The son was forced to attend a cardiologist appointment, and the cardiologist found that he was having bronchospasms, which led to chest pain. And as a reason of that, the son became hesitant to participate in sports in fear that he would faint. Had the father, the petitioner, been present at that time, the son was not in that same amount of fear. The Board does not address these particular facts, but on page 2 of the addendum, characterizes those facts, as well as the son's asthma, as currently manageable and largely stable. Because of this, we know that the standard that was applied by the Board is this heightened standard. It was suggested the Board added their own gloss on the facts before, in order to make that decision. How would you describe the standard that you think the Board used? There's no particular way for me to describe it, but I would suggest that the Board applied a heightened standard than what has been decided to be necessary, which is the exceptional and extremely unusual hardship standard, which is set out in Matter of Montreal and its progeny. The Board, I think, one of the things that I found that I'm interested in your views is that the potential for economic impact to the family would not be affected by his moving to Ecuador. Am I correct? That is correct, Your Honor. And what did the Board base, I'll ask your opponent, of course, but what is your view as to what the Board based that finding on? My understanding of the Board's finding with respect to the financial hardship is that they determined that the petitioner's wife, who is still present in the country, is still able to work, that she had been maintaining the children while the petitioner was detained in Immigration and Customs Enforcement custody. And my understanding is that the Board determined that although their standard of living would be lowered, it would not reach exceptional and extremely unusual hardship. As opposed to this, the immigration judge found that their lives would be significantly changed. With respect to going back to the asthma, the immigration judge suggested that it could be possible that the petitioner's son would not have access to his medication, which he needs on average about every two weeks. The family is forced to spend $75 on that every two weeks. In response to Judge Tarroya's question, didn't the Board further find and acknowledge that the children may well have a lowered standard of living and reduced economic activities as a result of their father being sent back to Ecuador? Yes, the Board did find that. However, the immigration judge made similar factual findings, which were not found to be clearly erroneous by the Board. And the immigration judge applied those facts to the legal standard as set forth in Matter of Montreal and found that it did meet exceptional and extremely unusual hardship. Go ahead, Judge Tarroya. No, you go ahead first. Are you ultimately saying here that given the undisputed facts, as a matter of law, one could not find that your client failed to satisfy the hardship requirement? Yes, Your Honor, that is exactly what we're stating. Does the record show what the income of the family was before your client was detained? Yes, Your Honor. The immigration judge mentions, I apologize, Your Honor, you're asking prior to my client's detention? Yes. In his testimony before the court, I believe that he estimated his income to be about $1,500 bi-weekly. I would have to refer back to the record specifically on that matter. In comparison to that, the petitioner's wife was earning about $500 weekly, which is about two-thirds of what the petitioner was adding. Prior to my client's detention, he was the sole and primary financial contributor. The petitioner's wife was supplemental income, which was to add to the food or clothing necessary for the family to survive. More or less about $3,500 a month between the two of them before he was detained. Would that be accurate? Your Honor, I'm not great at math. However, I think it may be a little bit more than that prior to my client's detention. All right. Does the record show what his income would be if he was deported to Ecuador? Yes, Your Honor. My client testified that he would be making on average about $10 per day in Ecuador. So he would be making about – I'm very bad at math. Somebody multiply that by 30. I think it would be about $300 a month, Your Honor. Pardon me? I think it would be about $300 a month. $300? Okay. Thank you. If there are no further questions, we would ask that the Court reverse the decision of the Board and grant Mr. DeCurry the opportunity to remain in the United States with his family. Thank you. Thank you. I'm sorry. I cut somebody out. Did either Judge Cayana or Judge Thompson want to ask further questions?  Thank you. Thank you. Thank you. All right. At this time, if Attorney Mascott could unmute her audio and video, and if Attorney Riley could mute hers. Attorney Mascott? Yes. Good morning, Your Honors, and may it please the Court. I'm Jennifer Mascott today arguing on behalf of the government. This case fundamentally is about the scope of this Court's jurisdiction to review exercises of discretion by the government to grant cancellation of lawful orders of removal. By statute, cancellation of removal is a discretionary benefit that the Attorney General can grant in only certain circumstances, and so, as Petitioner mentioned, one of the threshold requirements that has to be shown to get that benefit is that the Petitioner's family would face exceptional and extremely unusual hardship if the Petitioner were removed. Only once those threshold showings, among others, are made can the Attorney General, through the Board of Immigration Appeals, even exercise discretion to grant the benefit of cancellation of removal, a benefit that's capped by statute to 4,000 cases a year. And because the cancellation decision is a matter of discretion, Congress has limited jurisdiction to review those decisions. As Petitioner's counsel has mentioned, there's an exception if questions of law or constitutional claims are raised. Obviously, the Court has jurisdiction to review those, but the First Circuit has repeatedly said that factual claims, claims that are inherently fact-bound, just because they're spoken of in terms of law or the Constitution, does not make them, indeed, legal or constitutional questions. Am I correct that that rule applies also to the factual findings of the IJ when it goes up to the Board? Your Honor, yes, it would, although this Court has said that generally, once the Board has ruled, that the Board's decision is mostly what's subject to review here. It seems to me here that, and that's what apparently is alleged by your opponent, that the IJ made a bunch of findings of fact, which were circumvented by the Board. Am I correct, or am I on the wrong track? Yes, Your Honor, you're exactly right. I would read Petitioner's brief the same way. Petitioner lines up the facts looked at by the IJ and considered important, contrast them to the facts considered important by the Board, and so under this Court's precedent, that weighing of the evidence that the Petitioner wants this Court to review is within the discretionary determination and outside of this Court's jurisdiction. The Court has found that in Hassan v. Holder in 2012, that a Petitioner challenging the weighing of the evidence is more of a fact-bound determination outside of the jurisdiction of the Court. In Ayani v. Holder in 2010, where there was concern also about weighing the significance of a child's asthmatic condition, that that was something not before this Court for review. Rivera v. Sessions in 2018 were similar to the Petitioner's claim here. There was a claim that Monreal Board precedent was misread, and even with that claim, this Court still found that it lacked jurisdiction because it looked behind the terms of the Petitioner's challenge and noted that really the Petitioner was saying that the Board had looked at the wrong evidence, emphasized the wrong evidence, weighted improperly, and therefore it was asking essentially for review of the AG's exercise of discretion, which was outside of this Court's jurisdiction. Taking just the economic impact, do you agree with the numbers that we discussed previously? From about 3,000-some to 300 a month? Your Honor, those numbers do, to my recollection, match the record. I would agree that the Board and the immigration judge had before them evidence of the economic impact. This case is somewhat distinguishable to other cases in the past because here the mother is already right now providing financially for the children, so she would continue to be able to be in this country supporting them. Of course, as in all cases with removal, if the father were removed from the country, there would be an economic impact, and so it's a very hard situation. But Congress put in place in 1996 this exceptional and extremely unusual hardship standard, and so this Court, in its precedent, and the Board, has indicated that that standard means Petitioner has to prove that the hardship would be substantially different, or beyond the normal hardship we would expect when a relative is removed. And because the mother here is already providing, there would be an impact, but it would not rise precedentially to the level of exceptional and extremely unusual hardship. But the government would submit, actually, that this Court does not necessarily even need to reach that determination because here, again, we're talking about facts, the significance of the facts, how the facts would change. And so this Court has indicated that's outside of its jurisdiction to review. You mentioned the 4,000 statutory cap. Yes, Your Honor. Could you explain how that works? In other words, would granting discretionary hardship cancellation here preclude its granting in another case? Your Honor, indeed it might, if enough people had qualified for a cancellation removal. So my understanding, for example, from the Executive Immigration Review, is that there's actually currently a backlog, that there are 16,000 individuals who have faced a finding that their removal could be canceled. And so right now there's a backlog, and so the immigration courts would have to determine which of those individuals to grant the benefit to. There's actually been guidance put out by the Executive Office of Immigration Review in 2017, and what it does is suggest that if somebody in particular is not detained and an immigration judge finds that the threshold factors have been met for cancellation removal, that decision actually needs to be held in reserve because the immigration judges and the board don't really know if, indeed, that benefit will be granted until they see the total number of individuals who might merit the threshold finding of the benefit for each year. So again, what we're dealing with here, actually, with exceptional and extremely unusual hardship is just one of four threshold determinations that have to be made to even make somebody eligible, and then because of the cap, then discretion has to be exercised beyond that. The board didn't really review that much here. There were hints in the record below that perhaps discretion would not be warranted here because of some of the factual record of the petitioner not paying taxes or arrest, but we don't have to reach that here because the government would submit that there's still a factual problem even with satisfying the exceptional and extremely unusual hardship as a threshold matter. Are you finished, ma'am? No, Your Honor, if it's okay for me to proceed. So one other case I would point the court's attention to, Alvarado v. Holder in 2014. Also, there was analysis of the discretionary factors, and there were also some claims mentioned there that sounded, again, more legal in nature, such that the board did not mention precedent and things like that, and again, the court, the First Circuit, you all in that decision, which I believe was written by Judge Thompson, noted that legal and constitutional claims have to be colorable even for the court's jurisdiction here, so unless the petitioner can show even that there's a reasonable basis to think there's an actual legal problem with the board's decision, that this court would not necessarily exercise jurisdiction to hear the case, and in Alvarado, I believe, when there were questions about whether the claims were actually legal versus factual and whether the court's jurisdiction would come into play, the court declined to definitively, even there, decide that it had jurisdiction because the claims were sufficiently weak not to merit this court's review. Well, Counselor, I certainly can't disagree with myself. I mean, clearly the claim has to be colorable. I guess what I'm struggling with here is the argument is that it's a misapplication of the legal standard, and so I'm trying to figure out how do we look at that argument. Yes, Your Honor. Well, first, the government would say that the petitioner does frame the argument in terms of the application of the legal standard, but if one looks at the core of the claim, the debate really seems to be over which evidence, which facts are the most important facts to which to apply the legal standard. So, for example, the petitioner contends that it was improper to overlook some of the behavioral trouble that the son has been facing in this country, or it was not proper to overlook the fact that the mother has not been relying on health insurance to pay for inhaler and asthmatic treatment and that the treatment is getting worse. And so while, yes, the claim is in terms applying the legal standard to the facts, really the claim is that the wrong facts have been cherry-picked and the wrong facts have been looked at. And then also the petitioner's legal argument seems to be that… Isn't it that because the BIA didn't reject the findings, that the board arbitrarily selected facts to support a foregone conclusion? Your Honor, I do think, yes, that the petitioner's brief suggests at times that the board wrongly overlooked particular facts, and also that because the board overlooked the facts, it must indeed be the case that the board had decided that an unconscionability standard applied. But the board never says that, and as Your Honors pointed out during the petitioner's argument, the board actually cites its precedent in Monreal, it cites its precedent in Nondonzola,  and again repeatedly this court has said that when the core of the dispute is which particular facts are looked at, but the board understands the proper legal standard, that it's an issue of fact, it's an issue of discretion, and so that the case should not be before this court's jurisdiction. And so the government here has requested dismissal of the petitioner review for lack of jurisdiction. That's time. Thank you, Your Honors. Any further questions from the bench? Thank you. Thank you. That concludes the argument in this case. Attorney Riley and Attorney Mascott, you should disconnect from the hearing at this time.